# MEMORANDUM:
# CLAIMS FOR EMOTIONAL SHOCK IN SOUTH AFRICAN LAW

## INTRODUCTION:

1. The purpose of this memorandum is to furnish a legal opinion as to the substantive law applicable in South Africa pertaining to claims for so-called 'emotional shock' or 'emotional distress'.

2. Hence, this opinion sets out the relevant legal position in South African law, with reference to relevant case law and other authorities (in this regard, the comprehensive chapter on the subject furnished by the learned authors of LAWSA is particularly apposite.

## LIABILITY IN DELICT

3. As a point of Departure, it is trite South African law that an action in delict may lie for patrimonial loss or sentinel damage caused by intentional or negligent infliction of emotional shock, In addition, an action for damages for loss of support can also be instituted by the dependants of a bread winner who has died owing to the infliction of severe shock.

---

**LAWSA**: Vol 16, 3rd Edition (LexisNexis Electronic version) – "Emotional Shock" (**Author**: M DENDY Bcom LLB Attorney of the High court; Original text by JM POTGIETER Blur LLB LLM Professor of law, University of South Africa

**DEFINITION**

4. **In Swartbooi v Road Accident Fund,** the court defined "emotional shock" as shock suffered by a person without necessarily sustaining bodily injury, caused when a third party observes or is mortified by an unpleasant or disturbing event, e.g. the killing of a relative or a person with whom the third party had a close emotional relationship.

5. Similarly, the learned authors of LAWSA describe "emotional shock" as "a sudden, painful emotion or fright resulting from the realization or perception of an unwelcome or disturbing event which involves an unpleasant mental condition such as fear, anxiety or grief". In this regard, the term "emotional shock" maybe somewhat confusing in that transient shock does not attract any liability to pay damages – rather, it is the mental (psychological) and physical consequences which flow from it that may be compensable.

6. Emotional shock may be caused, *Inter alia*, by the prejudiced person's fear for his or her own safety or the safety of another person, by observing a gruesome or disturbing accident, or by learning of the death of a relative or loved one or of other disturbing events.

---

**Bester v Commercial Union Versekeringsmaatskappy van Beperk** 1973 (1) SA 769 (A);
See also **LAWSA** supra at para 544
**Masiba v Constantia Insurance Company Limited** 1982 (4) SA 333 (C) at 343G-344 A
Supra at para 545

7. Importantly, insofar as it is recognized that emotional shock is usually of a trivial nature and or relatively short duration with no significant detrimental effects on the plaintiff's physical or mental wellbeing, it is only in instances of more serious adverse physical or mental sequelae that a prejudiced person will be entitled to damages in respect of emotional shock (this aspect is dealt with in greater detail at paragraphs 12 (c) and (e) hereunder).

## HISTORICAL BACKGROUND

8. Prior to the Appellate Division's decision in 1973 in **Bester** supra, there were no clear guidelines and / or well grounded principles in our law on delictual liability for the infliction of emotional shock, As there is no Roman-Dutch authority in this field, our courts tended to seek guidance in English law, in which the action based on infliction of emotional shock was already firmly established early in the twentieth century.

9. However, the action based on emotional shock was firmly established in South African law in 1973 by virtue of the AD's decision in **Bester** supra. This decision was based firmly on South African Common law principles and granted the plaintiff patrimonial and sentimental damages for purely mental injury caused by negligent infliction of emotional shock (after the court a quo had rejected the claim on the ground that purely mental indispositions were not actionable.)

---

See **Hauman v Malmesbury Divisional Council** 1916 CPD 216

See **Bester** supra

See **Mulder v South British Insurance Company limited** 1957 (2) SA 444 (W)

See **Barnard v Santam Beperk** 1999 (1) SA 202 (SCA)

See **Masiba** supra

See **Waring and Gillow Limited v Sherborne** 1904 TS 340 at 348-349, read with **Wilkinson v Downton** 1897 2 QB 57, **Dulieu v White and Sons** 1901 2 KB 669 and **Hambrook v Stokes Brothers** 1925 1 KB 141 (CA).

## REQUIRMENTS FOR LIABILITY

10. The general requirements of delictual liability apply in an action based on the infliction of emotional shock. In this regard, **Bester** established that the criterion of liability for injury cased by shock is the reasonable foreseeability of such injury by shock. Accordingly, any further 'requisites' over and above the general requirements for delictual liability are not to be regarded as indispensable conditions for liability on the ground of emotional shock.

11. The requirements for delictual liability as applied in cases involving emotional shock can be summarised as follows:

**The act** – The requirement of an act, as an element of a delict, is satisfied if the doer by his or voluntary conduct creates circumstances which cause another to suffer emotional shock. In this regard, our law has recognized *inter alia* the detonation of dynamite, the use of threatening words, an attack by a dog, deliberately providing false and distressing information, the swopping of babies at birth, and physical injury during medical procedures, as fulfilling this requirement, Naturally, there is no *numerous clausus* of acts that would satisfy this requirement.

---

See **Bester** *supra* at 781G-H

a) <u>**Factual causation**</u> – A factual, casual nexus must exist between the act, the emotional shock and the harm suffered, Typically, medical or psychiatric evidence may be used to establish such a casual nexus (especially between the emotional shock and the harm suffered), although other evidence may also be used, such as the testimony of the plaintiff or family or friends of the victim.

b) <u>**Wrongfulness**</u> – Th unlawfulness of conduct that induces emotional shock lies in the infringement of the victim's bodily integrity, which is an aspect of his or her right to personality. Again, liability will only follow where the emotional shock has induced relatively serous physical or mental harm, whereas non-liability because of the trivial nature of the harm suffered may be explained on the basis of *de minimis non curat lex*.

c) <u>**Fault**</u> – The fault requirement in the context of delictual liability for emotional shock is no different from the fault criterion applicable to delictual liability generally. Damages are recoverable for physical or mental injury arising from the emotional shock, whether caused negligently or intentionally.

d) <u>**Damage**</u> – Infliction of emotional shock can cause personality infringement, pain and suffering, and patrimonial loss. Compensation is recoverable for patrimonial and sentimental damage caused through the infliction of emotional shock if the emotional shock gave rise to physical or mental harm – purely physical injury need not necessarily be present in order for liability to follow. Compensation may be awarded for mental injury unaccompanied by physical harm.

---

See **LAWSA** *supra* at para 549 and the authorities quoted at footnote 2 thereanent.
See **Bester** *supra* at 775H-776D; **Clinton-Parker v Administrator, Transvaal; Dawkins v**
See **LAWSA** *supra* at para 551

As mentioned previously, no recovery will be permitted for *sequelae* of a trivial nature and relatively short duration, which have no significant adverse effect on the victim's physical or mental wellbeing. Compensation will be awarded only for reasonably serious physical or mental injury which has marked effect on the victim's health.

Finally, while there is some authority in our law in support of the notion that even fear of damage to one's *property* may be sufficient to found an action for shock, provided that the other requirements of liability are satisfied, it is not necessary for present purposes to deal with this aspect in greater detail.

e) **Legal causation (imputability of harm)** – Even though our courts in the past (notably in **Bester** *supra* at 777C-E, 779H and 781A-781G) aapplied the reasonable foreseeability test to determine for which, if aany of the harful consequences caused by the wrongful and culpable infliction of emotional shock a doer should be liable, a new flexible approach to legal causation was introduced in **S v Mokgethi** and **International Shipping Co (Pty) Ltd v Bentley.**

---

See *inter alia* **Bester** *supra* and **Masiba** *supra*, as well as **Waring and Gillow** *supra* at 348 and **N v T** 1994 (1) SA 862 (C).

See **LAWSA** *supra* ata paragraph 554

See **Swartbooi** *supra* at 35D-E, where it was held that the extent and duration of the psychological consequences induced by emotional shock are the main factors which weigh heavily with the courts when assessing an amount for general damages for emotional shock.

See **Masiba** *supra* at 343F

According to this flexible approach, the overriding questions to be determined is whether there was a sufficiently close relationship between the wrongdoer's negligent (or intentional) act and the emotional shock that the shock may, in view of policy considerations based on reasonableness, fairness, and justice, be imputed to the wrongdoer. The criterion of foreseeability now merely play a subsidiary role, albeit and important one.

f) Factors which may be taken into consideration in determining whether the conduct of the tortfeasor was legal cause of the harm suffered (and which appear relevant to this question) include, for instance (i) that the emotional shock resulted from conduct which also caused injury to the victim through physical impact, (ii) the fact that the doer though his or her conduct caused the victim to fear personal injury, (iii) the fact that the victim personally witnessed the events causing the emotional shock, and (iv) the fact that the victim was a close relative or friend of a person who was killed or injured in the incident causing the emotional shock.

## GUIDELINES FOR DETERMINING QUANTUM

12. The quantification of general damages is always a matter of judicial discretion. In exercising such discretion, the court must determine a reasonable compensation which is fair and just in the peculiar circumstances of the case. Watermeyer JA, in **Sandler v Wholesale Coal Suppliers Ltd,** expressed the following *dictum:*

---

1990 (1) SA 32 (A)

1990 (1) SA 680 (A)

See **Mokgethi** *supra* at 40-41 and **International Shipping Co** *supra* at 700-701

> "....it must be recognised that though the law attempts to repair the wrong done to a sufferer who has received personal injuries in an accident by compensating him in money, yet there is no relationship between pain and money which makes it possible to express the one in terms of the other with any approach to certainty. The amount to be awarded as compensation can =only be determined by the broadest general considerations and the figure arrived at must necessarily be uncertain, depending upon the judge's view of what is far in all the circumstances of the case."

13. In **Mbhele v MEC for Health, Gauteng Province** (355/15) [2016] ZASCA 166 (18 November 2016), the Supreme Court of appeal commented as follows:

> "In order to determine general damages, courts acting in arbitrio iusicis and generally tending towards conservatism have regard to considerations such as awards in comparable cases, inflationary changes in the value of money, and problems arising from collateral benefits. Importantly, in making an award, a court is not bound by one or other method of calculating general damages. It has a wide discretion. As this court frequently pointed out each case must be determined on its own unique facts."

14. In the circumstances, the following decisions dealing with the quantification of general damages for emotional shock provide an indication of what courts

---

See **LAWSA** *supra* at paragraph 555
1941 AD 194 AT 199; See also **Allie v Road Accident Fund** [2003] 1 All SA 144 (C)
At paragraph 13

have, in the past, considered to be *".... fair in all circumstances of the case"* (importantly, it bears emphasising that the following summary is, at best, only intended to serve as a rough guide to past awards, and, as such, none of the awards are to be regarded as 'precedent setting' – the presiding judge retains their abovementioned *"wide discretion"*, to be exercised judicially);

    14.1. In **Majiet v Santam Ltd,** the plaintiff, a mother of a nine year old boy experienced emotional and psychogenic shock as a result of her coming upon the body of her son lying in the road shortly after he had been struck and killed by a motor vehicle. Having considered all the relevant facts, the court awarded an amount of R35 000 in respect of general damages, in 1997. Duly adjusted for inflation, this amount equates to R133 000 in 2022;

    14.2. In **Lett & another v The Minister of Safety and Security & another,** the plaintiffs, who were married, claimed damages as a result of trauma suffered from witnessing their daughter's wrongful shooting. The court awarded the husband R100 000 and the wife R120 000 for damages in April 2011. Duy adjusted for inflation, these amounts equate to R171 000 and R205 000, respectively, in 2022;

    14.3. In **Kritzinger & another v Road Accident Fund,** the plaintiff was informed of a collision and discovered that his two daughters had been killed when he arrived at the scene. He

---

In **Protea Assurance co Ltd v Lamb** 1971 (1) SA 530 (A) at 535H-536A, the following dicta is instructive: it should be emphasized, however, that the process of the comparison does not take the form of meticulous examination of awards made in other cases in order to fix the amount od compensation. Nor should the court's general discretion in such matter"
[1997] 4 All SA 555 (C)
See Koch's Quantum Yearbook, 2022, under 'Classified Listing of Inflation Adjusted Awards' - "shock"

suffered from chronic bereavement, post-traumatic stress disorder and a major depressive disorder. He was awarded R150 000 in March 2009. The adjusted value in 2022 amounts to R281 000.00;

14.4. In **Barker v Road Accident Fund,** the plaintiff claimed for damages she suffered as a result of the death of her son, who was run down by a motor vehicle while cycling. According to the medico-legal report, the plaintiff presented with what is referred to as an unresolved mourning process concerning her son, developed panic attacks and other symptoms including memory and concentration difficulties. The plaintiff was awarded R40 000 in general damages, in 2011 which equates to R68 000.00 in 2022;

14.5. In **R K and others v Minister of Basic Education and others,** the court awarded, in 2020, an amount of R350 000 each to parents whose son had tragically drowned in a pit latrine, as a result of which the parents suffered from inter alia post-traumatic stress disorder, a major depressive disorder fatigue, difficulty in sleeping, lack of concentration, poor appetite labile emotions sadness and grief, nightmares and flashbacks of their son lying in the pit with his hand outstretched. The amount equates to R384 000 in 2022.

---

2011 (6K3)QOD 1 (ECP)

ECP unreported case no 337/2008 (24 March 2009)

GP unreported case no 26292/2009 (6 May 2011)

**CONCLUSION**

15. In summary, it is clear that our courts recognise an action in delict for damages caused by intentional or negligent infliction of emotional shock (subject, of course, to the abovementioned requirements being met). Where such a claim has been proven, the courts will exercise a wide discretion in quantifying a plaintiff's damages. Each case must be determined on its own merits and, while awards in comparable cases may be helpful, they are by no means binding.

_____
TZVI BRIVIK
MALCOLM LYONS & BRIVIK INC.