UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LOUIS MESSINA, *et al.*, | ) |
| | ) |
|           **Plaintiffs,** | ) |
| | ) |
| v. | ) Civil Case No. 20cv1237 (RJL) |
| | ) |
| SYRIAN ARAB REPUBLIC, | ) |
| | ) |
|           **Defendant.** | ) |
| | ) |

MEMORANDUM OPINION
September 16, 2024 [Dkt. #17]

Plaintiffs, victims of an international terrorist attack and their family members, sue the Syrian Arab Republic ("Syria") under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, for damages arising out of a hotel bombing in Baghdad in 2005 and Syria's support of al-Qaeda in Iraq ("AQI"), who orchestrated that attack. Syria has not appeared to defend its conduct, and plaintiffs' Motion for Default Judgment is ripe. *See* Pls.' Mot. for Default J. ("Pls.' Mot.") [Dkt. #17]; Pls.' Mem. in Supp. of Pls.' Mot. ("Pls.' Br.) [Dkt. #17-1]. The Court **GRANTS IN PART** plaintiffs' motion because plaintiffs have established claims and entitlement to damages under the FSIA's state-sponsored terrorism exception. The Court **DENIES IN PART** the motion only to the extent that damages awarded differ from the amounts plaintiffs requested.

**I.  BACKGROUND**

Plaintiffs' claims arise from a terrorist attack at the Al Sadeer Hotel in Baghdad, Iraq, on March 9, 2005 (the "Attack"). Pls.' Br. 1. Plaintiffs Louis Messina, Tamara

1

Hassler, Russell Curry, and Steven Thomas are victims of the Attack who sustained serious injury, and they bring this action with affected family members. This is a consolidated case. *See* Min. Order (Dec. 22, 2021), *Hassler v. Syrian Arab Republic*, No. 21-cv-237; Compl., *id.* [Dkt. #1]; Compl., *Messina v. Syrian Arab Republic*, No. 20-cv-1237 [Dkt. #1]. Syria has not appeared. The Clerk entered default against Syria on April 8, 2021, as to the *Messina* complaint, *Messina* [Dkt. #15], and December 3, 2021, as to the *Hassler* complaint, *Hassler* [Dkt. #15]. Plaintiffs moved for default judgment on September 7, 2022. *Messina* [Dkt. #17].

## II.   FINDINGS OF FACT

Based on the record in this case, including affidavits and an expert report[1] submitted with plaintiffs' motion, *see Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 212 (D.D.C. 2012), and previous cases concerning the same actors, *see Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 109 n.6 (D.D.C. 2005), the Court makes the following findings of fact.[2]

### A.   AQI and Syria

Syria has continually been designated a state sponsor of terrorism since 1979. *See State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism/. "Syria has provided safe haven and support to terrorist organizations within its borders for decades." *Sotloff v. Syrian Arab Republic*, 525 F. Supp. 3d 121, 127 (D.D.C.

---

[1] Dr. Daveed Gartenstein-Ross is an expert on violent non-state actors like AQI. Indeed, Dr. Gartenstein-Ross has served as an expert witness in multiple federal cases on the Zarqawi organization. *See* Expert Witness Rpt. of Dr. Daveed Gartenstein-Ross ("Gartenstein-Ross Rpt."), *Messina* [Dkt. #17-2] at 7 & n.9.
[2] Further findings of fact specific to individual claims and damages are detailed *infra*.

2

2021). A current, notorious terrorist group is the Islamic State in Iraq and Syria ("ISIS"), but ISIS is merely "the most recent iteration of the Zarqawi organization, a militant group founded by Abu Musab Al Zarqawi ("Zarqawi") in the early 1990's." *Fields v. Syrian Arab Republic*, 2021 WL 9244135, at *4 (D.D.C. Sept. 29, 2021); *see also* Gartenstein-Ross Rpt. 12–21. After September 11, 2001, the Zarqawi organization aligned with al-Qaeda, and by 2005, Zarqawi had pledged allegiance to Osama bin Laden and was operating as AQI.[3] *Fields*, 2021 WL 9244135, at *4. AQI "was highly active in Iraq from 2003 through the Al Sadeer attack," and vehicle-borne IEDs "were a primary method the group employed to strike heavily fortified target[s]." Gartenstein-Ross Rpt. 41. AQI conducted many bombings, executions, and other attacks in Iraq between 2003 and the Attack, targeting other American citizens and contractors. *Id.* 17–19.

Syria supported and assisted AQI in Iraq in the years preceding and following the Attack. *See Fields*, 2021 WL 9244135, at *4; Gartenstein-Ross Rpt. 21–33 (detailing Syria's approval and active support of AQI). AQI's operations directly aligned with Syria's explicit desire to undermine the coalition of western forces in Iraq beginning after the U.S. invasion. Gartenstein-Ross Rpt. 21–22. "Syria was the critical geographic entry point for [AQI] into Iraq and served as a logistical hub for Zarqawi." *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53, 59 (D.D.C. 2008) (citation and quotations omitted). Syria's support for AQI was wide-ranging and included recruitment, training, harboring, protecting, transportation, intelligence, and financing. *See id.* at 59–63. The Syrian

---

[3] The terms "AQI" and "Zarqawi organization" are used interchangeably.

government had full knowledge of this, *id.* at 62–63, with Syrian President Bashar al-Assad even maintaining "direct contacts with AQI," *Fields*, 2021 WL 9244135, at *4.

**B.     The Attack**

On March 9, 2005, gunmen began shooting at security guards outside the Al Sadeer Hotel, while "two other militants disguised in police uniforms drove a garbage truck packed with explosives into the parking lot." Gartenstein-Ross Rpt. 33–34. The truck exploded "about forty yards from the hotel"; four people died, and about forty more were wounded in the Attack. *Id.* 34–35. AQI claimed responsibility and released a video of the Attack titled "Al-Sadeer Martyrdom Operation" with the group's logo as well as an audio statement providing more details. *Id.* 37. This media has been authenticated as AQI's. *See id.* 37–41. The Court accepts Dr. Gartenstein-Ross's conclusion that "AQI did in fact carry out this attack," and that "Syria was a critical piece to the puzzle, providing AQI with the infrastructure and resources it needed to carry out [such] an operation." *Id.* 37, 43.

**III.   LEGAL STANDARD**

A court may enter a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), "when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Plaintiffs must establish claims under the FSIA "by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *see* Fed. R. Civ. P. 55(d) (detailing the same standard). The Court will "determine precisely how much and what kinds of evidence the plaintiff must provide," *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C.

4

Cir. 2014), and it can "accept as true the plaintiffs' uncontroverted evidence." *Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 100 (D.D.C. 2000). Courts "ha[ve] an unusual degree of discretion over evidentiary rulings in a FSIA case" and evidence may fall beneath the standard normally required. *See, e.g.*, *Owens v. Republic of Sudan*, 864 F.3d 751, 785 (D.C. Cir. 2017), *vacated & remanded on other grounds sub nom. Opati v. Republic of Sudan*, 140 S. Ct. 1601 (2020). Such discretion extends to admitting expert testimony, here "of crucial importance" because "firsthand evidence and eyewitness testimony is difficult or impossible to obtain" from an absent sovereign. *Id.* at 785–87.

This Court may enter default judgment if it (1) "has subject matter jurisdiction over the claims, (2) personal jurisdiction is properly exercised over the defendant[], (3) the plaintiffs have presented satisfactory evidence to establish their claims against the defendants, and (4) the plaintiffs have satisfactorily proven that they are entitled to the monetary damages they seek." *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 75 (D.D.C. 2017).

## IV. ANALYSIS

### A. Default Judgment

Plaintiffs are entitled to default judgment because "(1) the Court has subject matter jurisdiction over their claims, (2) personal jurisdiction is properly exercised over Syria, (3) plaintiffs have presented satisfactory evidence to establish their claims, . . . and (4) they have satisfactorily proven that they are entitled to the monetary damages they seek." *Fields*, 2021 WL 9244135, at *6 (quoting *Braun*, 228 F. Supp. 3d at 75) (cleaned up).

## 1. Subject matter jurisdiction

This Court has subject matter jurisdiction under the terrorism exception to the FSIA because each victim-claimant was a U.S. citizen[4] and/or "an individual performing a contract awarded by the United States Government, acting within the scope of [their] employment,"[5] seeking monetary damages from a "foreign state . . . designated as a state sponsor of terrorism at the time the act" giving rise to the suit occurred (here, Syria),[6] "for personal injury" that was "caused by" "the provision of material support or resources" for an "extrajudicial killing" (the Attack). *See* 28 U.S.C. § 1605A(a)(1)–(2).[7] The first elements of this test are easily satisfied,[8] but the addressing the rest of the factors—that the "personal injur[ies]" at issue were (a) "extrajudicial killings" (b) that Syria "provid[ed] . . . material support or resources" for and (c) "caused"—is a horse of a different color.

*a. Extrajudicial killings.* Under the FSIA, an "extrajudicial killing" is, in relevant part, "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court." *See* 28 U.S.C. § 1605A(h)(7) (incorporating definition from Torture Victim Protection Act of 1991, Pub. L. No. 102-256, § 3(a), 106 Stat. 73 (1992),

---

[4] Victims Tamara Hassler, Russell Curry, and Steven Thomas, as well as their family member plaintiffs, are all U.S. citizens. T. Hassler Decl. [Dkt. #17-6] ¶ 2; R. Hassler Decl. [Dkt. #17-10] ¶ 2; R. Curry Decl. [Dkt. #17-7] ¶ 3; S. Thomas Decl. [Dkt. #17-8] ¶ 2.
[5] At the time of the attack, Louis Messina "was on a contract for the United States Department of Defense as part of [his] position for DynCorp"; he was "stationed at the Al Sadeer Hotel and tasked with defense of the facility." L. Messina Decl. [Dkt. #17-5] ¶¶ 2–4. Angelique Messina is Louis Messina's wife and V.M. is their child; all the Messinas are dual citizens of South Africa and Italy. A. Messina Decl. [Dkt. #17-9] ¶ 2.
[6] Syria has been a state sponsor of terrorism since 1979. *See State Sponsors of Terrorism*, U.S. Dep't of State, https://www.state.gov/state-sponsors-of-terrorism/.
[7] Because the attack at issue here did not occur in the defendant sovereign's territory, the arbitration provision in § 1605A(a)(2)(A)(iii) does not apply.
[8] *See supra* notes 4–5.

6

*codified at* 28 U.S.C. § 1350 note). The Attack unquestionably meets this definition: four people were killed; it required extensive planning evidencing deliberation; and no regularly constituted court sanctioned it. *See* Gartenstein-Ross Rpt. 35–36.

    *b. Material support.* The FSIA defines "material support or resources," in relevant part, as "any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, [or] personnel." 18 U.S.C. § 2339A(b)(1) (incorporated by 28 U.S.C. § 1605A(h)(3)). Syria has provided AQI with such "material support or resources" as: "property, tangible or intangible" (allowing AQI to recruit, train, move, and operate in its territory); "financial services" (providing AQI with access to its international financial networks to allow the organization to acquire arms and recruit internationally); training; expert advice or assistance (in the form of intelligence); safehouses; facilities; and personnel. Further, this Court can "take judicial notice and agree with the conclusions of several courts in our Circuit that have found that Syria provided material support to the Zarqawi organization." *Fields*, 2021 WL 9244135, at *8 (citing cases). Because AQI is responsible for the Attack (as it has claimed), Syria provided "material support and resources" for the Attack's extrajudicial killings.

    *c. Causation.* Finally, these extrajudicial killings were "caused by" Syria's "material support and resources." *See* 28 U.S.C. § 1605A(a)(1). Plaintiffs are only required to establish proximate cause. *See Owens*, 864 F.3d at 794. That standard "requires some reasonable connection between the act or omission of the defendant and the damage

7

which the plaintiff has suffered." *Roth v. Islamic Republic of Iran*, 651 F. Supp. 3d 65, 91 (D.D.C. 2023) (quoting *id.*). Considering that Syria helped AQI develop into a terrorist organization with increased financial and technical means and reach capable of executing the Attack, Syria's "actions [were] a substantial factor in the sequence of events that led to [plaintiffs'] injur[ies]" in the Attack and those injuries were "reasonably foreseeable or anticipated as a natural consequence of [Syria's] conduct." *Id.* (quoting *Owens*, 864 F.3d at 794). Plaintiffs therefore show the necessary "reasonable connection" to seek compensation "for personal injury or death that was caused by" "the provision of material support or resources" for an "extrajudicial killing." *See* 28 U.S.C. § 1605A(a)(1).

### 2.   Personal jurisdiction.

After concluding that service by means of 28 U.S.C. § 1608(a)(1)–(a)(3) were not possible, *see Hassler* [Dkt. #10]; *Messina* [Dkt. #9], plaintiffs properly served Syria pursuant to § 1608(a)(4), *see Hassler* [Dkt. #13]; *Messina* [Dkt. #12]. Accordingly, plaintiffs have properly exercised personal jurisdiction over defendant Syria.

### 3.   Establishment of claims

The five plaintiffs who are U.S. nationals—Tamara Hassler, Richard Hassler, Russell Curry, Barbara Curry, and Steven Thomas—may use the FSIA's cause of action. *See* 28 U.S.C. § 1605A(c)(1). Louis Messina may also utilize the FSIA's cause of action because he was a contractor for the United States at the time of the Attack. *See id.* § 1605A(c)(3); L. Messina Decl. ¶¶ 2–4. These six plaintiffs, having established subject matter jurisdiction by showing a waiver of sovereign immunity under the FSIA's terrorism exception, "ha[ve] also established entitlement to relief as a matter of federal law." *Fritz*

8

*v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 86–87 (D.D.C. 2018).

For plaintiffs Angelique Messina and V.M., "the federal cause of action is not available, [so this] court[] must determine whether a cause of action is available under state or foreign law and engage in a choice of law analysis." *Owens v. Republic of Sudan*, 826 F. Supp. 2d 128, 153–54 (D.D.C. 2011), *aff'd in part and vacated in part on other grounds*, 864 F.3d 751 (D.C. Cir. 2017). To adjudicate their claims for intentional infliction of emotion distress ("IIED"), the Court must select between the law of: the forum (D.C.); the place of the tort (Iraq); and plaintiffs' domicile countries (South Africa or Italy). Unfortunately for the defendant, D.C. law applies. How so?

"Federal courts addressing FSIA claims in the District of Columbia apply the choice of law rules of the forum state." *Id.* at 154. However, if no true conflict exists, D.C. law applies. *Id.* If there is a conflict, D.C. law would still apply. "[T]he law of the forum governs, 'unless the foreign state has a greater interest in the controversy.'" *Id.* (quoting *Kaiser–Georgetown Cmty. Health Plan v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985)). While Iraq (as situs of the harm) and South Africa and Italy (for concerns of their citizens) each have *an* interest in the controversy, neither interest is greater than this country and forum's interests in addressing state-sponsored terrorism directed toward U.S. nationals, interests, and agents. *See id.* at 154–55. Applying D.C. law is also consistent with the FSIA's amendments "to promote uniformity and extend access to U.S. federal courts to foreign national immediate family members of victims of terrorism." *Id.* at 155.

Angelique and V.M. make a prima facie claim for IIED under D.C. law because they show "(1) extreme and outrageous conduct on the part of defendants which, (2) either

9

intentionally or recklessly, (3) cause[d] [them] severe emotional distress." *Owens v. Republic of Sudan*, 71 F. Supp. 3d 252, 258 (D.D.C. 2014), *aff'd in part, question certified*, 864 F.3d 751 (D.C. Cir. 2017), and *aff'd*, 924 F.3d 1256 (D.C. Cir. 2019). *First*, "Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." *Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). *Second*, the conduct in the Attack was indisputably intentional and reckless considering the amount of planning involved and the support necessary to conduct it. *See supra* at Part II. *Third*, the Attack caused extreme emotional distress to Angelique and V.M. Louis "is no longer the loving, caring person [Angelique] married thirty-one years ago," "is unable to hold a conversation," and "is extremely volatile." A. Messina Decl. ¶¶ 7, 12. Angelique limits Louis's exposure to their friends and her daughter's friends because he is unpredictable. *Id.* V.M. suffers from depression from an abnormal childhood because of Louis's injuries. *Id.* ¶¶ 8–11. Angelique is greatly distressed, taking antidepressants and caring for Louis because he cannot care for himself. *Id.* ¶¶ 22–26.

### 4.    Entitlement to damages

For the six plaintiffs utilizing § 1605A(c)'s federal cause of action, money damages include "economic damages, solatium, pain and suffering, and punitive damages." 28 U.S.C. § 1605A(c). For Angelique Messina and V.M., "D.C. law, which supplies the cause of action, dictates" the availability of damages and allows for solatium and punitive damages. *Est. of Doe v. Islamic Republic of Iran*, 943 F. Supp. 2d 180, 191 (D.D.C. 2013); *see also Fields*, 2021 WL 9244135, at *14–15. Plaintiffs all merit damages because they show "the consequences of [Syria's] conduct were 'reasonably certain' (i.e., more likely

10

than not) to occur," and their damages are "reasonable estimate[s]." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 402 (D.D.C. 2015) (quoting *Salazar*, 370 F. Supp. 2d at 115–16). To determine "reasonable estimate[s]," this Court "look[s] to expert testimony and prior awards for comparable injury." *Braun*, 228 F. Supp. 3d at 82.

**B.   Damages**

Plaintiffs are entitled to damages under the operative standards discussed *infra*.

**1.   Economic damages**

Plaintiffs with claims under the FSIA's private right of action may receive damages awards for economic loss stemming from the injury or death of an immediate family member if they "can establish those damages through 'competent evidence.'" *Force v. Islamic Republic of Iran*, 617 F. Supp. 3d 20, 31 (D.D.C. 2022) (quoting *Moradi v. Islamic Republic of Iran*, 77 F. Supp. 3d 57, 71 (D.D.C. 2015)). A report by a forensic economist based on "reasonable and well-founded assumptions" commonly provides the appropriate basis for determining such awards. *Reed v. Islamic Republic of Iran*, 845 F. Supp. 2d 204, 214 (D.D.C. 2012). The standard for establishing entitlement to economic damages (future harm) is proving entitlement to a reasonable certainty, "(i.e., more likely than not)." *Hill v. Republic of Iraq*, 328 F.3d 680, 684–85 (D.C. Cir. 2003). Louis Messina, Tamara Hassler, and Steven Thomas seek economic damages for lost income. Vocational Specialist Barbara Byers submitted expert reports for each plaintiff detailing a vocational evaluation and wage-earning capacity analysis. Forensic economists Chad L. Staller and Stephen M. Dripps also submitted expert reports calculating plaintiffs' economic losses.

*Louis Messina.* Because of extensive physical and psychological injuries from the

11

Attack, Messina "has been unable to work since 2007." Vocational Evaluation Rpt. re L. Messina [Dkt. #17-11] at 4. Messina requests damages for his total economic loss, which is $4,660,982, assuming that he would have worked until his retirement age in Italy. Pls.' Br. 40; Forensic Econ. Rpt. re L. Messina [Dkt. #17-14] at 2–4, 9.

*Tamara Hassler.* Because of her psychological condition, physical limitations, and medical restrictions, Hassler is unable to take contract jobs in overseas security and is seriously restricted in her ability to work in the United States at all, let alone in law enforcement. Vocational Evaluation Rpt. re T. Hassler [Dkt. #17-12] at 4–5 ("[Hassler] has no placeability in full time competitive work."). Hassler seeks damages equivalent to her economic loss, which totals $2,954,676, based on working until her Social Security retirement age. Pls.' Br. 41; Forensic Econ. Rpt. re T. Hassler [Dkt. #17-15] at 3–4, 9.

*Steven Thomas.* As a result of the Attack, Thomas is unable to work overseas in his role as an international police liaison officer and is restricted to non-active police work in the United States. Pls.' Br. 41; Vocational Evaluation Rpt. re S. Thomas [Dkt. #17-13] at 3. Assuming that he would work until his Social Security retirement age, Thomas seeks damages equivalent to his economic loss of $2,776,249. Pls.' Br. 42; Forensic Econ. Rpt. re S. Thomas [Dkt. #17-16] at 8.

Because these reports rely upon reasonable and well-founded assumptions concerning plaintiffs' earning capacities and inabilities to work, plaintiffs have proven entitlement to damages to a reasonable certainty, and the Court awards them their requested

economic damages. *See Hill*, 328 F.3d at 684–85; *Reed*, 845 F. Supp. 2d at 214.

### 2. Compensatory damages for pain and suffering

Louis Messina, Tamara Hassler, Russell Curry, and Steven Thomas survived the Attack and seek damages for pain and suffering. *See Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). Awards for pain and suffering "are determined based upon an assessment of such factors as to the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Winternitz v. Syrian Arab Republic*, 2022 WL 971328, at *10 (D.D.C. Mar. 31, 2022). For "individuals who survive terrorist attacks, courts have adopted a baseline award of $5 million." *Id.* "Where physical and psychological pain is more dire . . . courts have departed upward from this baseline to $7 million and above." *Est. of Doe*, 943 F. Supp. 2d at 186.

Louis Messina seeks $7,500,000 in damages for his pain and suffering. Pls.' Br. 32. He has suffered "permanent medical problems" including a traumatic brain injury, facial nerve damage, near total loss of vision in his right eye, permanent damage to his left arm, seizures, and Chronic Obstructive Pulmonary disease. L. Messina Decl. ¶¶ 11–20. Messina is now "severe[ly] depressed," reclusive, lacking motivation, suffering from "bad nightmares" and has "an extremely bad temper which [he] cannot control most of the time." *Id.* ¶¶ 17–19. Messina's condition prevents him from taking care of himself. *See* Pls.' Br. 31–32. Messina has certainly suffered the kind of "physical and psychological pain [that] is more dire" to merit this larger award. *Est. of Doe*, 943 F. Supp. 2d at 186.

Tamara Hassler seeks $6,000,000 in damages for her pain and suffering. Pls.' Br.

13

33. Hassler suffered serious injuries to her mouth in the Attack that required "six oral surgeries a year for six years" and still impact her today. T. Hassler Decl. ¶¶ 28–29. Hassler has also struggled with flashbacks, depression, suicidal ideations, and PTSD from the Attack. *Id.* ¶¶ 31–39. Considering the extent of Tamara's injuries and the medical intervention they required, Tamara has suffered the kind of "physical and psychological pain [that] is more dire" to merit this larger award. *Est. of Doe*, 943 F. Supp. 2d at 186.

Russell Curry seeks the baseline award of $5,000,000 in damages for pain and suffering. Pls.' Br. 34. Curry's right arm caught significant shrapnel from the bomb that surgeons in Germany and the United States were unable to entirely remove. R. Curry Decl. ¶¶ 6–13. As a result, Curry has several scars and has lost twenty percent of the use of his right arm. *Id.* ¶¶ 14, 16. Because Curry sustained permanent physical injuries and lasting psychological impact from the Attack, this baseline award is merited.

Steven Thomas also seeks a baseline award of $5,000,000 in damages for pain and suffering. Pls.' Br. 35. Considering the serious extent and trauma of Thomas's injuries, he qualifies for an award above the baseline. The bomb in the Attack burned Thomas and embedded glass in his entire body, including his eyes, which he had to keep open for a doctor remove the shards. S. Thomas Decl. ¶¶ 26–28. Thomas continues to suffer from ringing in his ears, headaches, and phantom burning pain. *Id.* ¶ 35. He has struggled so much to sleep since the Attack that in addition to the effects of his injuries he has not been able to resume normal work or life. *Id.* ¶¶ 37–43. Accordingly, Thomas is awarded $6,000,000 for pain and suffering. *See Est. of Doe*, 943 F. Supp. 2d at 186.

### 3. Solatium

Plaintiffs who are family members of victims may recover damages known as solatium claims for the emotional injuries they suffer from harm to their relations. *Valore*, 700 F. Supp. 2d at 83. Solatium awards are thus available to Angelique Messina and V.M. as spouse and daughter of Louis Messina, Richard Hassler as father of Tamara Hassler, and Barbara Curry as spouse of Russell Curry. The severity of a family member's pain and nature of his or her relationship with the victim determines solatium damages. *See Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 269 (D.D.C. 2006). To calculate appropriate damages for solatium, courts in our Circuit often look to a standardization known as the *Heiser* damages framework. *See id.*

The *Heiser* framework suggests damages awards "between $8 million and $12 million for pain and suffering resulting from the death of a spouse [and] approximately $5 million to a parent whose child was killed." *Id.* "[A]wards of $3 million to children of deceased victims are typical." *Fields*, 2021 WL 9244135, at *14. When a claimant's victim-relation suffers non-fatal injuries, courts generally award half of what family members would receive if the victim had died. *See Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 39 (D.D.C. 2012). Courts "deviate upwards where the 'circumstances surrounding the terrorist attack make the suffering particularly more acute or agonizing.'" *Fields*, 2021 WL 9244135, at *15 (quoting *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26–27 (D.D.C. 2011)) (cleaned up).

Angelique Messina requests $5 million dollars in solatium damages—half of the middle of the typical *Heiser* range for awards to a deceased victim's spouse. Pls.' Br. 38;

*see Est. of Heiser*, 466 F. Supp. 2d at 269; *Wultz*, 864 F. Supp. 2d at 39. As explained, *see supra* p. 10, Louis's injuries have completely changed Angelique's life and caused her great distress and harm. Angelique's requested award is merited.

V.M. requests $3 million dollars in solatium damages, the amount typically awarded to children whose parents have died in an attack. Pls.' Br. 38; *see Fields*, 2021 WL 9244135, at *14. The standard award for a child of a victim who survived an attack would be half that amount. *See Wultz*, 864 F. Supp. 2d at 39. However, a $3 million award is appropriate because of the severity of harm V.M. has suffered. *See supra* p. 10. V.M. essentially lost her father in the Attack because, due to his severe psychological and physical injuries, Louis Messina is a different person today than he was before the Attack. Because V.M.'s father cannot lead any semblance of a normal life and her mother has the exceptionally difficult job of caring for him, V.M.'s life has been gravely impacted by her father's injuries from the Attack. Accordingly, V.M.'s requested award is merited.

Richard Hassler requests solatium damages of $2.5 million, the standard amount under the *Heiser* framework for a surviving victim's father. Pls.' Br. 38; *see Est. of Heiser*, 466 F. Supp. 2d at 269; *Wultz*, 864 F. Supp. 2d at 39. Since the Attack, his daughter has relied on him financially, but her struggles with PTSD have made it difficult for them to remain as close emotionally as they were before the Attack. R. Hassler Decl. ¶¶ 8–13. Hassler's demonstrated suffering from his daughter's injuries merits this award.

Barbara Curry requests $4 million in solatium damages—half the bottom of the *Heiser* range for a deceased victim's spouse. Pls.' Br. 39; *see Est. of Heiser*, 466 F. Supp. 2d at 269; *Wultz*, 864 F. Supp. 2d at 39. Curry has dementia, and while she

16

currently cannot always remember details of the Attack, she suffered greatly in the immediate aftermath and remains distressed when the topic is discussed. R. Curry Decl. ¶¶ 18–22, 28. Her requested, standard award is merited.

### 4. Punitive damages

Under 28 U.S.C. § 1605A(c), a court may award punitive damages to "punish outrageous behavior and deter such outrageous conduct in the future." *Oveissi*, 879 F. Supp. 2d at 55–56. D.C. law also permits awards of punitive damages for the IIED claims here. *Est. of Doe*, 943 F. Supp. 3d at 191. Plaintiffs may receive punitive damages when "defendants supported, protected, harbored, aided, abetted, enabled, sponsored, conspired with, and subsidized a known terrorist organization whose modus operandi included the targeting, brutalization and murder of American citizens and others." *Thuneibat v. Syrian Arab Republic*, 167 F. Supp. 3d 22, 53 (D.D.C. 2016) (quoting *Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 85 (D.D.C. 2011)). Syria's material support of AQI constitutes the support of "known terrorists whose stated mission is to devastate those who support Americans," which "certainly justifies the imposition of punitive damages." *Id.*; *see also Gates*, 580 F. Supp. 2d at 74. "Courts use four factors to determine to the proper amount of punitive damages[:] . . . '(1) the character of the defendants' act, (2) the nature and extent of harm to the plaintiffs that the defendants caused or intended to cause, (3) the need for deterrence, and (4) the wealth of the defendants.'" *Frost v. Islamic Republic of Iran*, 419 F. Supp. 3d 112, 117 (D.D.C. 2020) (quoting *Bodoff v. Islamic Republic of Iran*, 907 F. Supp. 2d 93, 105 (D.D.C. 2012)).

In our Circuit, courts have applied different methods when calculating punitive

17

damages, such as: (1) multiplying the annual amount a foreign state spends on terrorism; (2) following a ratio of punitive to compensatory damages from previous cases in which courts assessed similar conduct; and (3) "award[ing] a fixed amount of $150,000,000 per victim." *Thuneibat*, 167 F. Supp. 3d at 53–54. Plaintiffs request that the court award punitive damages in an amount three times the compensatory damages. Pls.' Br. 43. After weighing the necessary factors, that is the correct approach. In contrast, calculating the amount Syria spends on terrorism each year would be difficult and result in an outsized award, and fixed amounts of $150 million per victim are more appropriate for deadlier terrorism attacks. *See Frost*, 419 F. Supp. 3d at 117.

### 5. Prejudgment interest

Plaintiffs request prejudgment interest from the date of the Attack to the date of judgment on their awards. Compl. (Prayer for Relief); Pls.' Br. 44–45. Awarding prejudgment interest is within the Court's discretion. *Roth*, 78 F. Supp. 3d at 404. Because prejudgment interest does not apply to either pain and suffering, solatium, or punitive damages, the Court considers prejudgment interest only as to the economic loss awards in this case. *See Wyatt v. Syrian Arab Republic*, 908 F. Supp. 2d 216, 232 (D.D.C. 2012), aff'd, 554 F. App'x 16 (D.C. Cir. 2014); *Fields*, 2021 WL 9244135, at *17.

In our Circuit, courts "have awarded prejudgment interest in cases where plaintiffs were delayed in recovering compensation for their injuries—including, specifically, where such injuries were the result of targeted attacks perpetrated by foreign defendants." *Reed*, 845 F. Supp. 2d at 214 (quoting *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 530 F. Supp. 2d 216, 263 (D.D.C. 2008). Such is the case here, making prejudgment interest

18

appropriate. *See id.* Courts have calculated prejudgment interest by using the average "prime rate, *i.e.*, the rate banks charge for short-term unsecured loans to credit-worthy customers," *Baker*, 775 F. Supp. 2d at 86, "on a simple interest basis from the date of [the attack] to the present," *Reed*, 845 F. Supp. 2d at 214. Awards in line with that method (using the average prime rate from 2005 through 2023 of 4.61%) are reflected in their own column in Appendix A.

## V.   Conclusion

For the reasons above, plaintiffs' Motion for Default Judgment is **GRANTED IN PART AND DENIED IN PART** (that is, denied in part only to the extent that the damages awarded differ from those requested) and plaintiffs are awarded damages consistent with this Memorandum Opinion and as specified in Appendix A.

_____
RICHARD J. LEON
United States District Judge

## APPENDIX A

## Damages, Messina v. Syrian Arab Republic, Case No. 20-cv-1237

| Plaintiff | Relationship | Economic Damages | Prejudgment Interest | Pain & Suffering | Solatium | Punitive Damages | TOTAL |
|---|---|---|---|---|---|---|---|
| Barbara Curry | Spouse of Victim | | | | $4,000,000 | $12,000,000 | **$16,000,000** |
| Russell Curry | Victim | | | $5,000,000 | | $15,000,000 | **$20,000,000** |
| Tamara Hassler | Victim | $2,954,676 | $2,588,000 | $6,000,000 | | $34,628,028 | **$46,170,704** |
| Richard Hassler | Spouse of Victim | | | | $2,500,000 | $7,500,000 | **$10,000,000** |
| Louis Messina | Victim | $4,660,982 | $4,082,554 | $7,500,000 | | $48,730,608 | **$64,974,144** |
| Angelique Messina | Spouse of Victim | | | | $5,000,000 | $15,000,000 | **$20,000,000** |
| V.M. | Child of Victim | | | | $3,000,000 | $9,000,000 | **$12,000,000** |
| Steven Thomas | Victim | $2,776,249 | $2,431,716 | $5,000,000 | | $30,623,895 | **$40,831,860** |
| **TOTAL** | | $10,391,907 | $9,102,270 | $23,500,000 | $14,500,000 | $172,482,531 | **$229,976,708** |